UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNIFER ERICHSEN )<br><br>　　　Plaintiff )<br>v. )<br><br>WELLS FARGO BANK, NA, )<br>WELLS FARGO HOME MORTGAGE, )<br>INC., HARMON LAW OFFICES, PC )<br><br>　　　Defendants ) | Civil Action No. 10-11123 |

## PLAINTIFF'S SECOND AMENDED VERIFIED COMPLAINT

NOW COMES Jennifer Erichsen, Plaintiff herein and pursuant to the Federal Rules of Civil

Procedure Rule 15(a)(1)(B) or (a)(2), brings her Second Amended Verified Complaint against

the Defendants herein for a Declaratory Judgment, breach of contract, fraud, violation(s) of

M.G.L. c. 93, s. 49, violations(s) of the Attorney General's Regulations at 940 CMR 7.00,

violation(s) of 209 CMR 18.00 and violation(s) of M.G.L. c. 93A.  Plaintiff further states as

follows:

### I.　　PARTIES

1. Plaintiff Jennifer Erichsen is a natural person with a current residential address of 28

   Ticcoma Way, Nantucket, MA.

2. Defendant Wells Fargo Bank NA ("WF") is a "national association" organized under the

   laws of the laws of the Unites States with an address of 420 Montgomery Street, San

   Francisco, CA 94104.

3.  Defendant Wells Fargo Home Mortgage, Inc. ("WFHM") is a corporation organized under the laws of the State of California with an address of MAC X2302-019, 1 Home Campus, Des Moines, IA, 50328-0001.

4.  Harmon Law Offices, PC ("Harmon") is a professional corporation (law office) duly organized under the laws of the Commonwealth of Massachusetts with principal offices located at 150 California Street, Newton, MA 02458.

## II.    FACTS

A.  The October 1, 2004 Loan

5.  On or about October 1, 2004, Plaintiff obtained a mortgage from WF in the principal amount of $333,700.00 to purchase real property – via a so-called "1031 Exchange" - located at 1 Sea Fox Circle, Nantucket, MA ("the premises" or "the property").   Copies of the mortgage and promissory note ("note") allegedly executed by Plaintiff are attached to Plaintiff's original complaint as "Exhibit A".

6.  Plaintiff's mortgage noted that the "Lender" was WF.  See Paragraph "Definitions" at "C" on mortgage at "Exhibit A" to Plaintiff's original complaint.

7.  Plaintiff's note indicated that the "Lender" was WF.  See Paragraph 1 on note at "Exhibit A" to Plaintiff's original complaint.

8.  By its terms, Plaintiff's note indicated that WF could transfer the note and that anyone who took the note by "transfer and who is entitled to receive payments under this Note is called the "Note Holder".  See Paragraph 1 on note at "Exhibit A" to Plaintiff's original complaint.

2

9. Plaintiff's note indicated that monthly payments were to be made to <u>WF</u>. See Paragraph 3(A) on note at "Exhibit A" to Plaintiff's original complaint.

10. Although WF was originally disclosed to Plaintiff listed as the party to whom monthly payments were to be made (see above), WFHM, a separate entity and evidently a subsidiary of WF, sent invoices to Plaintiff and was actually the "loan servicer" and the party who sent Plaintiff invoices and statements and was the one to whom Plaintiff made payments.

11. The Massachusetts Secretary of State's records show that WFHM ceased operations in MA in 2005. See "Foreign Certificate of Withdrawal" dated February 17, 2005 which is attached to Plaintiff's original complaint as "Exhibit V".

12. At all pertinent times herein, WF, WFHM and Harmon are or were required to be in compliance with the requirements of M.G.L. c. 93, s. 49 with regard to Plaintiff's loan.

13. At all pertinent times herein, WF, WFHM and Harmon are or were "engaged in commerce" in the Commonwealth of Massachusetts for the purposes of M.G.L. c. 93A and their involvement with Plaintiff's loan.

14. Plaintiff experienced a default in 2008 that was cured.

15. In October 2009 Plaintiff again got behind on the mortgage payments.

16. Plaintiff immediately attempted to work with WFHM to make payments to bring her loan current and get out of default.

17. Despite significant efforts, Plaintiff could not establish consistent contact with a single representative to work with her on her loan account.

18. Plaintiff was required to repeatedly provide information that she had already provided to employees of WFHM on repeated occasions, was forced to wait inordinate amounts of time on hold only to repeat again the story that she had told many times, and was generally ignored, rebuffed and passed around amongst various WFHM employees and representatives in an endless loop unable to reach anyone who could properly be termed a "decision-maker" or anyone who would be able to provide her with direction about how to get out of default.

19. WFHM's "system" for helping distressed borrowers with possible loan modification(s) was characterized by negligence, inefficiency and bureaucratic and institutional incompetence on a massive scale.

20. All of Plaintiff's efforts to reinstate her loan were ultimately ignored by WFHM.

21. In December 2009, Plaintiff contacted counsel for help.

22. On or about January 13, 2010, despite continuing to work with WFHM and counsel on a loan modification and providing the information that WFHM was requesting on a regular basis, Plaintiff was notified by Harmon Law Offices, PC ("Harmon") that they had been hired by WF to foreclose on the property. See copy of the January 13, 2010 letter from Harmon attached to Plaintiff's original complaint as "Exhibit B".

23. In their letter of January 13, 2010, Harmon claimed WF was the "holder" of the mortgage and that any amounts due under the note had been accelerated and were immediately due and payable to WF.

24. The same day, and prior to Plaintiff receiving notice of the default and acceleration, Harmon filed a Complaint to Foreclose Mortgage in the Massachusetts Land Court on

4

behalf of WF.  See Land Court filing materials attached to Plaintiff's original complaint at "Exhibit C".

25. Defendant's Land Court complaint included a "Mortgagee's Affidavit" that was allegedly signed on behalf of WF by "Xee Moua" as "Vice President of Loan Documentation" for WF.  See "Mortgagee's Affidavit" attached to Plaintiff's original complaint at "Exhibit C".

26. Nowhere on Xee Moua's "affidavit" was there reference to a corporate resolution or a corporate seal or other indication of Xee Muoa's authority to sign such an affidavit on behalf of WF.  See "Mortgagee's Affidavit" attached to Plaintiff's original complaint at "Exhibit C".

27. Attached to Defendant's Land Court complaint was a "default" letter dated July 16, 2008, some fifteen (15) months *before* the default alleged by Harmon in their January 13, 2010 letter.  See letter dated July 16, 2008 attached to Plaintiff's original complaint at "Exhibit C".

28. On or about January 22, 2010 Plaintiff's counsel sent Harmon a letter stating that the Plaintiff was now represented by counsel.  See copy of letter attached to Plaintiff's original complaint at "Exhibit D."

29. On or about January 28, 2010, counsel for Plaintiff sent Harmon and WFHM a limited power of attorney ("LPOA") authorizing Harmon and WFHM to speak with counsel for Plaintiff about Plaintiff's matter(s).  See copy of letter from counsel for Plaintiff and LPOA from Plaintiff attached to Plaintiff's original complaint at "Exhibit E".

30. After January 28, 2010, despite knowledge that Plaintiff was represented by counsel, Plaintiff continued to be contacted repeatedly by WFHM.

31. On March 3, 2010, counsel for Plaintiff sent a G.L. c. 93A demand letter to WFHM requesting, among other things, that communications with Plaintiff cease. See copy of March 3, 2010 letter to WFHM attached to Plaintiff's original complaint at "Exhibit F".

32. By letter dated March 5, 2010, WFHM notified Plaintiff – directly and not through counsel – of conditions required to "start" a loan modification. See copy of letter from WFHM attached to Plaintiff's original complaint at "Exhibit G".

33. By letter dated March 17, 2010, WFHM purported to respond to Plaintiff's G.L. c. 93A letter of March 3, 2010. A copy of WFHM's response is attached to Plaintiff's original complaint at "Exhibit H".

34. On March 18, 2010, Plaintiff, by and through counsel, and in response to WFHM's letter of March 5, 2010, again provided documentation to WFHM regarding a requested loan modification for Plaintiff. See letter from counsel for Plaintiff to WFHM attached to Plaintiff's original complaint at "Exhibit I".

35. Plaintiff was unable to make the initial payment described in WFHM's letter of March 5, 2010 due to a burst pipe in the premises in February 2010 that she paid out of pocket to fix in order to get the premises ready to rent so that she could get enough income to pay her mortgage. See Paragraph B "The Insurance Claim" below.

36. On March 24, 2010, Harmon notified counsel for Plaintiff of the Notice of Sale of the premises. See March 24, 2010 letter from Harmon attached to Plaintiff's original complaint at "Exhibit J".

37. On April 15, 2010, more than thirty (30) days after sending the March 3, 2010 G.L. c. 93A demand letter, counsel for Plaintiff received a letter from Harmon stating that it had been "retained" to respond to Plaintiff's 93A demand letter of March 3, 2010 and that it had postponed the scheduled foreclosure sale from April 29, 2010 to June 3, 2010 as a show of "good faith". See copy of April 15, 2010 letter from Harmon to counsel for Plaintiff attached to Plaintiff's original complaint at "Exhibit K".

38. On April 23, 2010 counsel for Plaintiff sent another G.L. c. 93A demand letter to WFHM due to WFHM's failure to endorse an insurance settlement check to Plaintiff to reimburse her for expenses incurred in repairing the burst pipe. See Paragraph B below. This letter included additional 93A claims against WF and WFHM incurred by Plaintiff subsequent to Plaintiff's March 3, 2010, 93A demand letter.

39. On May 17, 2010, more than two (2) months after Plaintiff's March 3, 2010, G.L. c. 93A demand letter, Harmon provided a purported "response". A copy of Harmon's response is attached to Plaintiff's original complaint at "Exhibit L".

40. On May 18, 2010, counsel for Plaintiff sent a "Qualified Written Request" for documents to WFHM pursuant to the Federal Servicer Act, which is a part of the Real Estate Settlement Procedures Act ("RESPA") at 12 U.S.C. 2605(e). A copy of this letter is attached to Plaintiff's original complaint at "Exhibit M".

41. On May 20, 2010, counsel for Plaintiff sent further correspondence to WFHM, rejecting the contentions and representations of WFHM regarding Plaintiff's participation in the attempted loan modification, WFHM's defective and redacted "log" as detailed by Harmon in their May 17, 2010 "response" to Plaintiff's March 3, 2010 c. 93A demand

7

letter.  Counsel for Plaintiff requested a further continuance of the proposed sale date which had been variously identified to counsel's office by employees of WFHM as June 3, June 2, and June 10.  A copy of this letter is attached to Plaintiff's original complaint at "Exhibit N".

42. By letter dated May 21, 2010 (and in other places dated May 24, 2010), WFHM purported to respond to Plaintiff's QWR letter of May 18, 2010.  WFHM failed to respond completely to Plaintiff's requests.  WFHM asserted in this letter that WF was the owner and holder of Plaintiff's promissory note.  A copy of this letter is attached to Plaintiff's original complaint at "Exhibit O".

43. On May 24, 2010, after calling to check the status of Plaintiff's loan modification request, counsel for Plaintiff's office was advised by WFHM that the loan was still under review and that the June 3, 2010 sale was not going forward.

44. On May 26, 2010, counsel for Plaintiff was notified by the second lien holder, Nantucket Bank, that they had been advised by Harmon that the sale was in fact going forward on June 3, 2010.

45. On May 26, 2010, counsel for Plaintiff 's office staff spoke directly with WFHM and was told by WFHM that they (WFHM) "didn't know what was going on" and that counsel should call Harmon.

46. Later in the day of May 26, 2010, counsel for Plaintiff spoke directly with WFHM.  He was advised that WFHM had requested a continuance of the sale from the "investor" Freddie Mac (Federal Home Loan Mortgage Corporation; FHLMC) but that such request had not yet been responded to.

47. May 26, 2010 was the first time counsel for Plaintiff became aware that Plaintiff's loan was not owned by WF but was in fact owned by Freddie Mac.

48. Ownership of Plaintiff's mortgage by Freddie Mac was subsequently confirmed through Freddie Mac's website.  See copy of screen shots attached to Plaintiff's original complaint at "Exhibit P".

49. Freddie Mac is a government sponsored enterprise ("GSE") of the United States federal government.  Along with other GSEs, Freddie Mac buys mortgages on the secondary market, pools them, and sells them as a mortgage-backed security to investors on the open market.  The name, "Freddie Mac", is an acronym of the company's full name Federal Home Loan Mortgage Corporation.

50. Freddie Mac – as a buyer and seller of mortgages on the secondary markets – *requires* that mortgage originators such as WF and loan servicers such as WFHM, *not* record any documents that would tend to show that Freddie Mac is the owner of the loan and the beneficiary of the security interest under the mortgage unless and until Freddie Mac authorizes them to do so.   Accordingly, Freddie Mac requires that any foreclosures be brought in the name of the mortgage holder of record irrespective of Freddie Mac's ownership of the note.  See Freddie Mac guidelines attached hereto and incorporated herein at "Exhibit Q".   A complete 89 page handbook of Freddie Mac's document custody procedures is available at: www.freddiemac.com/cim/pdf/00_TOC_2010.pdf

51. There is nothing on the "copy" of Plaintiff's note to indicate that it has been endorsed to Freddie Mac or anyone else.  See note provided by WFHM in response to Plaintiff's

QWR attached to Plaintiff's original complaint at "Exhibit A" and attached to Plaintiff's original complaint at "Exhibit O".

52. If Freddie Mac owns the note but the mortgagee is still WF, the note and mortgage are owned by two (2) separate entities.

53. In order to show that a valid foreclosure action has been filed, Defendants must prove that they held the note and the mortgage (or valid assignment(s) in recordable form) at the time the complaint to foreclose was filed in the Land Court and that the foreclosure action otherwise strictly complies with the requirements of G.L. c. 244, s. 14. See U.S. National Association, Trustee v. Ibanez, Mass. Land Court Misc. Case No. 384283, et al. See also  Bottomly v. Krabachnick 13 Mass. App. Ct. 480, 484 (1982). ("It is familiar law that one who sells under a power of sale must follow strictly its terms.   If he fails to do so there is no valid execution of the power, and the sale is wholly void.").

54. There is no recorded assignment of the mortgage from WF to Freddie Mac – or any other entity - on the public land records, yet Freddie Mac indicates that it owns Plaintiff's "mortgage".  See "Exhibit P" attached to Plaintiff's original complaint.

55. On May 26, 2010, counsel for Plaintiff sent correspondence to Harmon requesting clarification of whether the scheduled sale was still on for June 3, 2010 and demanding that the sale be postponed.  As of June 1, 2010, Harmon has not replied to this request.  A copy of this May 26, 2010 letter to Harmon is attached to Plaintiff's original complaint at "Exhibit R".

56. Between January 2010 and present, Plaintiff, by and through counsel, has consistently provided any information that WFHM has requested regarding employment verification, evidence of income, etc., in an effort to work through a loan modification agreement.

57. Between January 2010 and present, WFHM has continually and repeatedly contacted Plaintiff directly, either by phone or mail, relative to this matter despite notice that Plaintiff was represented by counsel since at least January 28, 2010.  See copies of letters from WFHM attached to Plaintiff's original complaint at "Exhibit S".

B.  The Insurance Claim

58. On or about February 10, 2010, the premises had a pipe freeze and burst causing flooding and damage to the premises.

59. Plaintiff, with the help of her husband, worked diligently to make repairs to the premises as they were working to rent the premises in order to get income to get caught up on their mortgage obligations.  They did not hire a general contractor as they had little money to formally engage someone to perform the work.

60. Plaintiff submitted a timely insurance claim and ultimately received an insurance check of roughly $5,800.00 to reimburse her for the out-of-pocket expenses, invoices and bills that Plaintiff paid herself to repair the damages.

61. The check from the insurance company however, was made payable to Plaintiff as well as WF and thus Plaintiff could not cash it.

62. Plaintiff timely submitted the check, along with documentation of the damage repairs to WF in order that WF endorse the check and Plaintiff be reimbursed for the costs of the repairs that she paid personally.

63. WF refused to endorse the check.

64. On April 23, 2010, counsel for Plaintiff sent WFHM a M.G.L. c. 93A demand letter for WFHM's failure(s) to comply with reasonable efforts to modify Plaintiff's loan – but also for WF's failure to properly endorse the insurance check to Plaintiff so that she could be reimbursed for the out-of-pockets she incurred in repairing the premises. A copy of the April 23, 2010 M.G.L. c. 93A demand letter to WFHM is attached to Plaintiff's original complaint at "Exhibit T".

65. By letter dated May 18, 2010, WFHM purported to respond to Plaintiff's April 23, 2010 M.G.L. 93A demand letter. A copy of WFHM's response is attached to Plaintiff's original complaint at "Exhibit U".

66. WFHM has continued to refuse to endorse the insurance check to Plaintiff.

## COUNT ONE
## DECLARATORY JUDGMENT; REQUEST FOR INJUNCTIVE RELIEF
(WF, WFHM)

67. Plaintiff repeats and re-alleges the allegations in the foregoing numbered paragraphs as more fully set forth herein.

68. Defendant WF has brought a foreclosure action against Plaintiff asserting that it is the "owner and holder" of Plaintiff's note and mortgage dated October 1, 2004.

69. This representation has been made by WF, WFHM and its attorneys (Harmon) in correspondence to Plaintiff, Plaintiff's counsel, as well as the Land Court for the Commonwealth of Massachusetts. See various Exhibits attached hereto.

70. Freddie Mac owns Plaintiff's "mortgage". See "Exhibit P" attached to Plaintiff's original complaint.

71. WF cannot hold the note and mortgage while Freddie Mac holds the note and mortgage and therefore a justiciable controversy exists over who owns any obligation that Plaintiff may have (if anyone) and who therefore has the lawful authority to foreclose on Plaintiff's mortgage (if anyone).

72. Given that Freddie Mac claims to own Plaintiff's loan, Plaintiff is entitled to a declaratory judgment that WF does not own Plaintiff's loan.

73. Until such time as someone or some entity produces an original note and mortgage with all proper documentation and assignment(s) thereof substantiating that they are entitled to foreclose on Plaintiff's mortgage, and that all procedures under G.L. c. 244, s. 14 were followed including but not limited to the sufficiency of any documentation provided to the Land Court (i.e. affidavit of "Xee Muoa") to commence foreclosure proceedings, Plaintiff is entitled to injunctive relief prohibiting Defendants, or others acting by and through them, from taking any further actions to enforce any alleged obligation because if Defendants were to proceed with an unlawful foreclosure, Plaintiff would suffer irreparable harm.

## COUNT TWO
## WRONGFUL FORECLOSURE
(G.L. c. 244, s. 14; ALL DEFENDANTS)

74. Plaintiff repeats and re-alleges the allegations in the foregoing numbered paragraphs as more fully set forth herein.

75. On or about January 13, 2010, Defendants, acting in cooperation and concert with one another, filed a Complaint in the Massachusetts Land Court to foreclose on Plaintiff's mortgage. See "Exhibit C" attached to Plaintiff's original complaint.

76. Said complaint was filed by Harmon and listed WF as the mortgagee entitled to foreclose on Erichsen's mortgage.

77. WFHM, as the loan servicer, and the only entity that Plaintiff had contact with since the inception of the loan, knew or should have known that WF did not own the loan and was not entitled to foreclose on same.

78. WFHM withdrew from doing business in MA as of February 17, 2005 and thus was not legally entitled to be involved with any aspect of Plaintiff's loan.

79. At all pertinent times herein, WFHM knew that Freddie Mac owned Plaintiff's loan.

80. At all pertinent times herein, Harmon, as attorneys for WF and WFHM, knew or should have known that WF did not own the loan and was not entitled to foreclose on same.

81. The foreclosure complaint filed with the Massachusetts Land Court was wrongful in that:

   a. WF did not "own" the loan in question as of the date of the filing of the Land Court complaint, rather Freddie Mac did and of this date, still does;

   b. The foreclosure complaint claimed that WF was the "owner" and "holder" of the mortgage and underlying obligation when such was not true;

    c. The Mortgagee's Affidavit executed by "Xee Muoa" contains no apparent authority via resolution, corporate seal or otherwise for any such individual to execute an affidavit on behalf of WF to foreclose on Plaintiff's mortgage;

    d. Upon information and belief, "Xee Muoa", an alleged Vice President of WF for the purpose of executing the Mortgagee's Affidavit for WF, is an employee of Harmon;

    e. No party herein had or has standing to proceed with a foreclosure of Plaintiff's property because no party herein has established that they are a proper "party in interest" pursuant to Mass. R. Civ. Pro. Rule 17;

    f. As otherwise may be shown at any trial on this matter

82. As a direct and proximate result of Defendants' wrongful foreclosure, the Plaintiff has incurred damages, costs and attorney fees in bringing this action as well as loss of credit standing, and other costs.

**COUNT THREE**
**BREACH OF CONTRACT**
(WF, WFHM)

83. Plaintiff repeats and re-alleges the allegations in the foregoing numbered paragraphs as more fully set forth herein.

84. Plaintiff engaged in a contract with WF whereby WF allegedly loaned Plaintiff moneys to purchase a house.

85. Consideration was given for that agreement.

86. Plaintiff executed the agreement in accordance with the terms and conditions required by WF.

87. WFHM, a subsidiary of WF, has acted as an agent for WF from October 1, 2004 to present and accordingly, the actions of WFHM as the "loan servicer" – irrespective of WFHM's "withdrawal" from doing business in Massachusetts as of February 17, 2005 - are binding on WF.

88. Defendants have breached the agreement with Plaintiff as follows:

   a. Defendant WF represented to Plaintiff that WF was the owner *and* servicer of Plaintiff's loan.  In fact, WFHM was/is the servicer of Plaintiff's loan and no disclosure was ever made to Plaintiff about WFHM becoming Plaintiff's loan servicer or that WFHM had withdrawn from doing business in Massachusetts as of February 17, 2005;

   b. Defendant WF has sought to foreclose on the mortgage with Plaintiff with no legal right to do so under the terms of the loan documents since WF has sold the loan to Freddie Mac and therefore WF's exercise of the power of sale in Plaintiff's mortgage is unlawful and a breach of contract with Plaintiff;

   c. As otherwise may be shown at any trial on this matter.

89. As a direct and proximate result of Defendants' breach of contract, the Plaintiff has incurred damages, costs and attorney fees in bringing this action as well as loss of credit standing, and other costs.

## COUNT FOUR
## VIOLATION OF M.G.L. C. 93, s. 49
### (WFHM and HARMON)

90. Plaintiff repeats and re-alleges the allegations in the foregoing numbered paragraphs as more fully set forth herein.

91. The MA Fair Debt Collection Practices Act, at M.G.L. c. 93. S. 49 prohibits one who is acting to collect the debt of another from engaging in fraudulent practices in connection therewith.

92. WFHM and Harmon are "creditors" or agents or attorneys for "creditors" or are otherwise subject to the requirements of M.G.L. c. 93, s. 49.

93. WFHM has violated M.G.L. c. 93, s. 49 by:

   a. Fraudulently representing that its parent company, WF is the true owner and holder of the Plaintiffs' mortgage loan obligation, when, in fact, it is not;

   b. Engaging in the business of debt-collection in the Commonwealth of Massachusetts when WFHM withdrew from doing business in Massachusetts with the Massachusetts Secretary of State on or about February 17, 2005;

   c. Violating various regulations of the Commonwealth of Massachusetts including but not limited to 940 CMR 7.00 and 209 CMR 18.00;

   d. As otherwise may be shown at any trial on this matter.

94. Harmon has represented to the Massachusetts Land Court by signing its name to pleadings therein that WF is the true "owner and holder" of Plaintiff's mortgage loan obligation with willful and reckless indifference as to whether or not such was in fact true.

95. Harmon had continued to pursue Plaintiff's foreclosure and the collection of moneys therefrom despite the fact that WF does not own Plaintiff's loan.

96. As a direct and proximate result of Defendants' violation of M.G.L. c. 93, s. 49, the Plaintiff has incurred damages, costs and attorney fees in bringing this action as well as loss of credit standing, and other costs.

## COUNT FIVE
## VIOLATION OF MA ATTORNEY GENERAL'S REGULATIONS
(940 CMR 7.00; WFHM and HARMON)

97. Plaintiff repeats and re-alleges the allegations in the foregoing numbered paragraphs as more fully set forth herein.

98. Defendants WFHM and Harmon are considered "creditors" engaged in the business of debt collection within the Commonwealth of Massachusetts or are otherwise subject to the Attorney General's Regulations codified in 940 CMR 7.00.

99. Defendant WFHM's actions in pursuing a debt against Plaintiff when WFHM withdrew from doing business in the Commonwealth of Massachusetts in February 2005 is a violation of 940 CMR 7.00.

100.    Defendants WFHM and Harmon's actions in pursuing a debt for WF when such debt is not owed to WF, and as otherwise may be shown at trial on this matter, represent violation(s) of the Attorney General's Regulations at 940 CMR 7.00.

101.    Defendants' violations of 940 CMR 7.00 represent unfair and deceptive acts or practices pursuant to G.L. c. 93A and thus represent willful and knowing violation(s) of M.G.L. c. 93A.

102.    As a direct and proximate result of Defendants' violation of 940 CMR 7.00, the Plaintiff has incurred damages, costs and attorney fees in bringing this action as well as loss of credit standing, and other costs.

## COUNT SIX
## VIOLATION OF MA DIVISION OF BANK'S REGULATIONS
(209 CMR 18.00; WFHM and HARMON)

103.    Plaintiff repeats and re-alleges the allegations in the foregoing numbered paragraphs as more fully set forth herein.

104.    WFHM, as a "loan servicer", is considered a "debt collector" within the

Commonwealth of Massachusetts, and are therefore subject to the registration

requirements with the Massachusetts Division of Banks as stated in 209 CMR 18.00.

105.    WFHM is not registered as a "debt collector" pursuant to 209 CMR 18.00.

106.    Harmon is considered a "debt collector" as that term is defined in 209 CMR

18.00.

107.    WFHM's actions in pursuing a debt against Plaintiff when WFHM is not

registered with the Division of Banks as a debt collector and when WFHM affirmatively

withdrew from doing business in the Commonwealth of Massachusetts in February 2005

is a violation of 209 CMR 18.00.

108.    WFHM's actions in failing and refusing to validate Plaintiff's debt upon request

when WFHM knew or should have known that WF did not own Plaintiff's loan, engaging

in a lengthy, bad-faith so-called "loan modification program" with Plaintiff when WFHM

knew that their parent company, WF did not own the loan and therefore was not entitled

to modify it, and as otherwise may be shown at any trial in this matter represent

violation(s) of 209 CMR 18.00.

109.    WFHM and Harmon, as a result of their actions in knowingly or recklessly

facilitating the wrongful foreclosure of Plaintiff's property, and as otherwise may be

shown at any trial on this matter, violated 209 CMR 18.00.

110.    Defendants' violations of 209 CMR 18.00 represent unfair and deceptive acts or

practices pursuant to G.L. c. 93A and thus represent willful and knowing violation(s) of

M.G.L. c. 93A.

111.     As a direct and proximate result of Defendants' violation of 209 CMR 18.00, the

Plaintiff has incurred damages, costs and attorney fees in bringing this action as well as

loss of credit standing, and other costs.

### COUNT SEVEN
### VIOLATION OF M.G.L. c. 93A
(ALL DEFENDANTS)

112.     Plaintiff repeats and re-alleges the allegations in the foregoing numbered

paragraphs as more fully set forth herein.

113.     WF and WFHM by virtue of engaging the origination, servicing and foreclosure

of residential loans in the Commonwealth of Massachusetts are considered "engaged in

commerce" for the purposes of G.L. c. 93A.

114.     Harmon, by virtue of being hired to foreclose on consumers such as Plaintiff, and

then seeking to assess attorney's fees for which Plaintiff would allegedly be responsible,

and under the "debt collector" provisions of G.L. c. 93 and 940 CMR 7.00 and 209 CMR

18.00, is considered "engaged in commerce" for the purposes of G.L. c. 93A.

115.     Plaintiff, by having sought out and received a residential loan for her property is

considered a "consumer" entitled to the protections of G.L. c. 93A

116.     WFHM's acts and practices in:

   a.  Engaging Plaintiff in a bad-faith "loan modification" program over a period of

       months that was rife with incompetence, negligence, inconsistency, delay and

       maddening and unnecessary redundancy with no intention on the part of WFHM

       of providing any proposed loan modification  to Plaintiff because WFHM had no

       authority to modify the terms of the loan owned – not by WF - but by Freddie

       Mac;

b.  Failing and refusing to provide reasonable offers of settlement within thirty (30) days to Plaintiff's G.L. c. 93A letters of March 3, 2010 and April 23, 2010;

c.  Failing and refusing to provide documents responsive to Plaintiff's May 18, 2010 "QWR" letter;

d.  Providing responses to Plaintiff that were false, misleading and untrue with respect to the "true" ownership of Plaintiff's loan;

e.  Violating 940 CMR 7.00 and 209 CMR 18.00 as previously stated;

f.  Continuing to act as a "loan servicer" and "debt collector" as those terms are defined herein in the Commonwealth of Massachusetts after affirmatively withdrawing from doing business in Massachusetts in 2005;

g.  Failing and refusing to endorse the check for the insurance proceeds to Plaintiff after reasonable request from Plaintiff for same and after Plaintiff provided complete documentation of the damages and expenses to WFHM;

h.  As otherwise may be shown at any trial on this matter;

All represent unfair and deceptive acts under M.G.L. c. 93A for which WFHM is liable.

117.    Harmon's acts or practices in:

a.  Filing a MA Land Court complaint to foreclose on Plaintiff's mortgage without properly investigating whether or not WF had the legal authority to foreclose;

b.  Violating various provisions of 940 CMR 7.00 and 209 CMR 18.00 as previously stated herein;

c.  As otherwise may be shown at any trial on this matter;

All represent unfair and deceptive acts under G.L. c. 93A for which Harmon is liable.

118.    As a direct and proximate result of Defendants' knowing and/or intentional

violation(s) of M.G.L. c. 93A, the Plaintiff has incurred damages, costs and attorney fees

in bringing this action as well as loss of credit standing, and other costs.

### COUNT EIGHT
### FRAUD, MISREPRESENTATION
(ALL DEFENDANTS)

119.    Plaintiff repeats and re-alleges the allegations in the foregoing numbered

paragraphs as more fully set forth herein.

120.    Defendant WF committed fraud and misrepresentation against Plaintiff by:

   a.   Advising Plaintiff that WF was the "lender" and the party to whom payments

        would be made when WF knew that another entity, WFHM was going to perform

        the loan servicing;

   b.   Providing responses to Plaintiff's legitimate requests for information that were

        false, misleading and untrue with respect to the "true" ownership of Plaintiff's

        loan;

   c.   Commencing a Massachusetts Land Court action and other legal process when

        WF knew that it didn't own Plaintiff's loan;

   d.   Engaging Harmon to commence foreclosure proceedings against Plaintiff based

        on an alleged default that took place in 2008 which Plaintiff had cured;

   e.   Knowingly and intentionally commencing foreclosure proceedings against

        Plaintiff pursuant to G.L c. 244, s. 14 when it knew that it didn't own Plaintiff's

        loan anymore and that it was thus unable to legally commence proceedings under

        G.L. c. 244, s. 14;

   f.   As otherwise may be shown at any trial on this matter;

121.    WFHM committed fraud by:

    a.  Engaging Plaintiff in a bad-faith "loan modification" program over a period of months that was rife with incompetence, bureaucratic bungling, negligence, inconsistency, delay and maddening and unnecessary redundancy with no intention on the part of WFHM of providing any proposed loan modification to Plaintiff because WFHM had no authority to modify the terms of the loan owned – not by WF - but by Freddie Mac;

    b.  Providing responses to Plaintiff that were false, misleading and untrue (or which omitted certain reasonably requested information) with respect to the "true" ownership of Plaintiff's loan when Plaintiff made her QWR request and other requests under G.L. c. 93A;

    c.  Knowingly and intentionally withholding the name of the "true" owner of Plaintiff's loan in an effort to "hide the ball" so that Plaintiff would not challenge the foreclosure action;

    d.  Failing and refusing to provide all documents that Plaintiff requested in her QWR including but not limited to a complete loan payment history (WFHM only provided 2007 to present);

    e.  Continuing to do business in the Commonwealth of Massachusetts after affirmatively withdrawing from being able to do with the MA Secretary of State on February 17, 2005;

    f.  As otherwise may be shown at any trial on this matter;

122.    Harmon committed fraud by:

    a.  Filing a Land Court action in WF's name when they knew or should have known that such an action was unlawful and in violation of G.L. c. 244, s. 14 since WF was not the true owner and holder of the note and mortgage;

    b.  Filing documents with the Land Court that did not provide legal authorization from WF to commence foreclosure proceedings;

    c.  Representing to Plaintiff in writing(s) that WF was the loan owner and holder when it knew or should have known that such representations were untrue;

    d.  As otherwise may be shown at any trial on this matter.

123.    The fraud perpetrated on Plaintiff by the affirmative fraudulent representation and actions on the part of the Defendants was done to induce Plaintiff's reliance that the foreclosure of her house was legitimate and based on the documents she originally executed with WF and that therefore represented WF was entitled to foreclose when they were not.

124.    Plaintiff relied on the fraudulent misrepresentations of the various Defendants in:

    a.  pursuing and attempting to negotiate a loan modification with WFHM;

    b.  working diligently to repair the premises and seek reimbursement for damages from the insurance company;

    c.  seeking new tenants so that she could afford her loan payments instead of simply walking away;

    d.  holding off on legal action to defend the foreclosure sale in the Land Court action by not filing an answer to same since it appeared – and had been represented to her and to her counsel -  that WF had the legal right to foreclose;

    e.  as otherwise may be shown at any trial on this matter.

125.    As a direct and proximate result of Defendants' fraud the Plaintiff has incurred

damages, costs and attorney fees in bringing this action as well as loss of credit standing,

and other costs.

WHEREFORE Plaintiff prays for the following relief:

1.    DECLARE that Defendants WF and WFHMA have no right, title, or interest in

the Plaintiff's mortgage loan obligation and no security interest on Plaintiff's

property;

2.    ORDER that Defendants or others acting by and through them, be prohibited from

taking any further actions to enforce Plaintiff's alleged obligation(s) to WF;

3.    Enter JUDGMENT for Plaintiff on Counts ONE though EIGHT of her complaint

together with treble damages, attorney's fees and costs;

4.    AWARD any such other and further relief as the Court deems meet and just;


PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE

I, Jennifer Erichsen hereby attest that I have reviewed the factual allegations contained in this
Second Amended Verified Complaint and do hereby swear under the pains and penalties that
such are accurate and true to the best of my knowledge and belief.


                                            /s/     Jennifer Erichsen
DATED:   July 15, 2010                      _____
         Nantucket, MA                      Jennifer Erichsen

Respectfully Submitted,
By her attorney,

/s/ Jamie Ranney, Esq.

_____

Jamie Ranney, Esq. BBO#643379
Jamie Ranney, PC
4 Thirty Acres Lane
Nantucket, MA 02554
508-228-9224 (ph)
508-228-4752 (fax)
jamie@nantucketlaw.pro